UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

```
LIVE FACE ON WEB, LLC,                HONORABLE JOSEPH E. IRENAS

          Plaintiff,                  Civil No. 14-3777 (JEI/AMD)

     v.                                         OPINION

UNLIMITED OFFICE SOLUTIONS, LLC
d/b/a GREEN TECHNOLOGY
SERVICES,

          Defendant.
```

**APPEARANCES**:

LAW OFFICE OF JASON RABINOVICH, PLLC
By: Jason L. Rabinovich, Esq.
1700 Market Street
Suite 1005
Philadelphia, PA 19103
     Counsel for Plaintiff

MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN
By: Dante C. Rohr, Esq.
200 Lake Drive East, Suite 300
Cherry Hill, NJ 08002
     Counsel for Defendant

**IRENAS,** Senior United States District Judge:

    This is a copyright infringement suit.[1]  Before the Court is Defendant Unlimited Office Solutions, LLC d/b/a Green Technology Services, Inc. ("Green Technology's") Motion to Dismiss for failure to state a claim for either direct or indirect copyright

---

[1] The Court exercises federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

1

infringement.  For the reasons set forth below, the Motion will be granted as to LFOW's contributory infringement claim and denied in all other respects.

### I.

This is the second opinion in a series of three, all addressing similar factual and legal issues, and all involving Plaintiff LFOW's claims of copyright infringement.[2]

LFOW owns and develops software and video technology, which it licenses to individuals and businesses for use in online advertising. (Compl. ¶ 8-9, 14)  LFOW's customers use the software to customize a "live" walking and talking "[video] spokesperson" to direct a website visitor's attention to particular products or aspects of the website. (Id. ¶ 9-10)  LFOW allegedly is a "leading developer" of this technology.  (Id. ¶ 8)  LFOW's software is alleged to be copyrighted work, registered with the U.S. Copyright Office. (Id. ¶ 15)

Green Technology allegedly "operated its website using an unlawful version of LFOW's software."  (Compl. ¶ 18)  The software

---

[2] LFOW originally filed one copyright infringement complaint against four Defendants: Emerson Cleaners, Inc.; Unlimited Office Solutions LLC, d/b/a Green Technology Services (the Defendant in this case); Innovative Pain Management, LLC; and Linvas Corporation t/a Sunrise Gentlemen's Club.
   Magistrate Judge Donio later ordered the cases severed from each other, although they are being managed as related cases.
   Innovative Pain Management has answered the complaint and has no motions presently pending.  The other three Defendants have each moved separately to dismiss.

version Green Technology used is alleged to be unlawful because the version came from Tweople, Inc., rather than LFOW.  (Compl. ¶ 18)

According to the Complaint LFOW filed against Tweople in the Middle District of Florida (Exhibit E to Green Technology's Motion to Dismiss)[3], Tweople blatantly copied LFOW's source code and began offering live spokesperson services to Tweople's customers (including Green Technology) using LFOW's source code.

According to the Complaint in this case, in order to "implement" the infringing software from Tweople, Green Technology "modified" its website to include a source code that "link[ed]" Green Technology's website "to the infringing software."  (Compl. ¶ 19)[4]

What allegedly happened when a person visited Green Technology's website is particularly relevant to the instant Motion.  According to the Complaint:

> 12.  When a web browser is directed to a website which has incorporated LFOW Technology, the website distributes a copy of the LFOW Software, which is automatically downloaded by the web browser into cache and/or computer memory and/or hard drive, allowing the launch of the

---

[3] *See Live Face on Web, LLC v. Tweople, Inc., et al.*, Civil Case No. 6:14-cv-44 (M.D. Fla.).  LFOW filed the Florida suit on the same day this suit was filed, although different counsel represent LFOW in the two suits.  The Florida litigation has progressed further than the cases in this Court.  Most relevantly, the presiding judge in the Florida suit, Chief District Judge Anne C. Conway, denied three motions to dismiss filed by Tweople's customers (three of 20 such defendants in the Florida suit).  The issues raised by those Motions to Dismiss are similar to the issues raised by the instant Motion.

[4] The Complaint alleges that "during at least a portion of the period of infringement Tweople has hosted the infringing software for [Green Technology]." (Compl. ¶ 25)

> specified video using the LFOW Software. As a result, every time a website with LFOW's Software is visited, a copy of LFOW's Software is distributed to the website visitor.
>
> . . .
>
> 21. As a result of the modification to [Green Technology's] website . . . a copy of the infringing software is distributed by [Green Technology] to each visitor to its website, which is necessarily stored on the website visitor's computer.
>
> 22. [Green Technology] intends for a copy of the infringing software to be distributed to website visitors, as this is necessary for the video spokesperson to appear on the screen of the website visitor. The volitional distribution of the infringing software by [Green Technology] to its website visitors is seamless and transparent for the website visitors, who are able to view the video spokesperson . . . by virtue of receiving the copy of the infringing software.

Notably, however, the Complaint indicates that Green Technologies does not "host" the allegedly infringing source code. Instead, the Complaint acknowledges that Tweople hosts the code. (Compl. ¶ 48)

The Complaint asserts one claim for "copyright infringement." However, that one "copyright infringement" claim states that it "is an action under 17 U.S.C. § 501 for direct, indirect, vicarious, and/or contributory infringement of registered copyright(s)." (Compl. ¶ 41)

**II.**

4

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2). While a court must accept as true all factual allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.

The Court addresses first the direct infringement claim, and then the indirect infringement claims.

### A.

5

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991). Only the second element is at issue in this motion.

"Copying is a shorthand reference to the act of infringing any of the copyright owner's . . . exclusive rights set forth at 17 U.S.C. § 106." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002) (internal citation and quotation omitted). The exclusive rights implicated in this suit are the first three enumerated by § 106: the right "(1) to reproduce the copyrighted work in copies . . . ; (2) to prepare derivative works based upon the copyrighted work; [and] (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending."[5]

Green Technology argues that the Complaint fails to state a claim for direct infringement because the facts alleged cannot support a legal conclusion that Green Technology copied, as opposed to merely used, LFOW's copyrighted software.

Green Technology argues that the Complaint does not allege anywhere that Green Technology "copied" or "reproduced" LFOW's software. But of course that simple observation is not dispositive

---

[5] The other enumerated rights pertain only to the arts-- i.e., "literary, musical, dramatic, . . . choreographic works" and the like-- and "sound recordings." 17 U.S.C. § 106(4)-(6).

of the issue, particularly when the material alleged to have been infringed is computer code.

As the case law demonstrates, determining when digital media on the Internet is "copied" is a fact-intensive inquiry. While the Third Circuit has not addressed the issue, other Courts of Appeals have.

For example, the Second Circuit has held, in a thorough and well-reasoned opinion, that copying of digital information for purposes of copyright infringement liability occurs when the copyrighted work "is placed in a medium such that it can be perceived, reproduced, etc., from that medium," and is "embodied [in the medium] for a period of more than transitory duration." *Cartoon Network LP v. Twentieth Century Fox Film Corp.*, 536 F.3d 121 (2d Cir. 2008).

Similarly, the Ninth Circuit has held that "the loading of software into [a computer's] RAM [random access memory] creates a copy under the Copyright Act." *Mai Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 519 (9th Cir. 1993); *see also id.* at 518 ("MAI has adequately shown that the representation created in the RAM is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration.").[6]

---

[6] *Cited with approval in* Levey v. Brownstone Inv. Group, LLC, 2014 U.S. App. LEXIS 20616 at *7 (3d Cir. Oct. 23, 2014); *see also Quantum*

By alleging that Green Technology's website causes "a copy of the LFOW Software" to be "automatically downloaded"[7] "into" the website visitor's "cache and/or computer memory and/or hard drive," LFOW has sufficiently alleged that Green Technology has caused the copying of the software.  The fact that the actual code resides on Tweople's server and not Green Technology's server does not change this conclusion.  The specific technological mechanism by which this is accomplished may be explored during discovery.

Moreover, completely independent from the copying issue-- which implicates the exclusive right granted by § 106(1) (the right to "reproduce")-- is the distribution issue, which implicates § 106(3).  Even if the Court were to rule that LFOW had failed to sufficiently allege that Green Technology reproduced the computer code (which the Court does not rule), the Complaint sufficiently alleges facts supporting the plausible conclusion that Green Technology's website distributed copies of the code to each of the website's visitors.  (See Compl. ¶¶ 21-22, *supra*)  Indeed, Green Technology does not argue otherwise.

---

*Systems Integrators, Inc. v. Sprint Nextel Corp.*, 338 F. App'x 329, 336-337 (4th Cir. 2009) (following *MAI Systems*).

[7]  The Oxford English Dictionary defines "download" as "to copy (data) from one computer to another (now usually from a web server, via the Internet)."

Lastly, as to both reproducing and distributing, Green Technology argues that the Complaint fails to allege that Green Technology engaged in any "volitional conduct."

The "volitional conduct" requirement for direct copyright infringement liability focuses on "the volitional conduct that causes the copy to be made." *Cartoon Network*, 536 F.3d at 131. The requirement originated with a now-famous case that held that an Internet Service Provider (ISP) (i.e., the company that provides Internet access, usually for a fee) cannot directly infringe copyrighted material because "there should still be some element of volition or causation which is lacking where a defendant's system is merely used to create a copy by a third party." *Religious Tech. Ctr. v. Netcom On-Line Comm. Svs., Inc.,* 907 F. Supp. 1361, 1369 (N.D. Cal. 1995); *see also Parker v. Google, Inc.*, 242 F. App'x 833, 836 (3d Cir. 2007) ("'[an] ISP should not be found liable as a direct infringer when its facility is used by a subscriber to violate a copyright without intervening conduct of the ISP. . . . When an electronic infrastructure is designed and managed as a conduit of information and data that connects users over the Internet, the owner and manager of the conduit hardly 'copies' the information and data in the sense that it fixes a copy in its system of more than transitory duration.'") (quoting *CoStar Group, Inc. v. LoopNet, Inc.,* 373 F.3d 544, 550 (4th Cir. 2004)).

9

In this case, Green Technology clearly is not an ISP. Moreover, LFOW alleges that Green Technology, by operating its own website, is more than just a conduit of information; that its website operates to cause the downloading of LFOW software, and that Green Technology modified its own website to accomplish the downloading. These allegations are sufficient to satisfy the volitional conduct or causation element of a direct infringement claim. The specifics of how Green Technology's website caused the downloading of LFOW software, and Tweople's role in that process, may be explored during discovery.

LFOW has stated a claim for direct copyright infringement against Green Technology. Green Technology's Motion to Dismiss the direct infringement claim will be denied.

**B.**

LFOW has also sufficiently stated a claim for vicarious copyright infringement, but not contributory copyright infringement.

**1.**

"A plaintiff alleges a claim for vicarious copyright infringement when he alleges that the defendant 'has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.'" *Parker v. Google*, 242 F. App'x 833, 837 (3d Cir. 2007) (quoting *Gershwin Publ'g Corp. v.*

*Columbia Artists Mgmt Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). "'Financial benefit exists where the availability of infringing material acts as a draw for customers.' There is no requirement that the draw be 'substantial.'" *Id.* (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004)).

As to the first element, Green Technology argues that it "did not have the right to, nor did it supervise Tweople's infringing activity." (Moving Brief, p. 9) However this argument misses the mark.

LFOW's Complaint alleges that Green Technology's website caused LFOW's software to be copied and caused copies to be distributed. It is certainly plausible that Green Technology had the right and ability to supervise the operation of its own website. Indeed, the Complaint pleads that Green Technology did modify its website to allow for the software to be downloaded to visitors' computers.

At oral argument, Green Technology argued that the question was not whether it had the ability to control its own website, but rather, whether it had the ability to supervise Tweople's alleged copying of LFOW's code. Green Technology cites no authority for such a narrow interpretation of vicarious infringement law. Indeed, it appears the law is not so narrow. As the Second Circuit has observed, "a person who has *promoted or induced* the infringing acts of the [direct infringer] has been held jointly and severally liable

11

as a 'vicarious' infringer." *Gershwin Publ'g Corp.*, 443 F.2d at 1163 (emphasis added).

Further, as Nimmer on Copyright explains, "vicarious liability exceeds the traditional scope of the master-servant theory -- the proprietor of a dance hall is liable for infringing performances of the orchestra, even if the orchestra is hired as an independent contractor and exclusively determines the music to be played." 3 Nimmer on Copyright § 12.04. In this case, at least at the pleadings stage, it appears that Green Technology is analogous to the dance hall proprietor; it provides a forum-- its website-- for visitors to come and receive an unlawful copy of the copyrighted material. Thus, Green Technology's argument fails.

Likewise, Green Technology's financial benefit argument fails. The Complaint alleges that the live talking person on Green Technology's website "was a powerful sales and advertising tool for Defendant to generate revenues and profits." (Compl. ¶ 30) "[T]he use of the infringing source code allows Defendants to more effectively promote and sell their product(s) and/or service(s) on their website by capturing, holding and prolonging attention of the average online visitor." (Compl. ¶ 29) These allegations plausibly support a conclusion that the availability of infringing material acted as a "draw for customers." *Parker*, 242 F. App'x at 837; *see generally* 3 Nimmer on Copyright § 12.04 ("courts seem to have relaxed [the financial benefit] standard over time. . . . Indeed, [one

district court has held] that, even absent the receipt of any revenues whatsoever, a future hope to 'monetize' suffices. It seems scarcely an exaggeration to posit that an obvious and direct financial interest is now understood to encompass a possible, indirect benefit."); *see also Live Face on Web, LLC v. Howard Stern Productions, Inc.*, 2009 U.S. Dist LEXIS 21373 at *11-12 (E.D. Pa. March 17, 2009) (holding that LFOW had stated a claim for vicarious infringement where complaint alleged that the video spokesperson was "designed to and did draw and prolong visitors' attention to the website" and "increased the amount of time users would spend on the website.").

The Motion to Dismiss will be denied as to the vicarious infringement claim.

**2.**

To allege a claim of contributory copyright infringement, a plaintiff must allege: (1) direct copyright infringement of a third-party; (2) knowledge by the defendant that the third-party was directly infringing; and (3) material contribution to the infringement. *Parker*, 242 Fed. Appx. at 837 (citing *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160 (3d Cir. 1984)).

Green Technology only challenges the second element, arguing that LFOW has merely pled conclusions and not facts supporting a

plausible inference that Green Technology knew that Tweople was infringing LFOW's copyright.

LFOW makes no argument in opposition.

The Court agrees with Green Technology.  Even when viewing the allegations of the Complaint as a whole, nothing about the circumstances or context within which the claims are alleged to have arisen suggests that Green Technology knew or should have known, or deliberately took steps not to know, that the software it was using was copyrighted by someone other than the company from which it obtained the software.

Accordingly, Green Technology's Motion to Dismiss will be granted as to the contributory infringement claim.

## IV.

For the above-stated reasons, Green Technology's Motion to Dismiss will be granted as to LFOW's contributory infringement claim and denied in all other respects.[8]

---

[8] The Court has not ignored Green Technology's observation of the seeming unfairness of this result.  As counsel very pragmatically observed at oral argument, Green Technology is a small business.  For a one-time fee of a few hundred dollars, it contracted with Tweople to provide "live" spokesperson capabilities on Green Technology's website and nothing more.  Nothing about the facts of this case suggests that Green Technology had any reason to know that, or should have inquired whether, Tweople had allegedly copied LFOW's computer code.  As both LFOW and Green Technology seem to agree, the alleged principal wrongdoer here is not Green Technology, but Tweople.  Yet, as a result of this decision, Green Technology must now engage in litigation to defend this suit.  Even if Green Technology ultimately

An appropriate Order accompanies this Opinion.


Date:   December 11, 2014


                                        ___s/ Joseph E. Irenas_____
                                        JOSEPH E. IRENAS, S.U.S.D.J.

---

prevails at summary judgment or trial, the costs to Green Technology-
- in terms of both time and money-- seem quite disproportionate in
view of the simple transaction that led to this suit.
     Nonetheless, applying copyright law to computer code is tricky
business, and this Court has very little controlling precedent with
which to work.  Depending on the ultimate outcome of this suit,
perhaps the Court of Appeals will have an opportunity to address this
issue.